UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

AMERICAN GUARANTEE & LIABILITY
INSURANCE COMPANY, Individually and
as subrogee/assignee of UNITED
AMERICAN INSURANCE COMPANY,

       Plaintiff,

v.

                                                                                                   Civ. No. 13-277 MV/LFG

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Liberty Mutual Fire Insurance Company's Motion to Dismiss [Doc. 5]. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be granted.

## BACKGROUND

This case arises out of a July 29, 2008 collision between JoAnn Spafford-Paak and Daniel Lobato, which occurred on Highway 550 in Bernalillo, New Mexico. Doc. 1-1 (Complaint) ¶ 8. As a result of the collision, Lobato was injured, and he and his wife sued Paak and her employer, United American Insurance Company ("UAIC"), in the New Mexico state court case of *Daniel Lobato v. Spafford-Paak et al.* ("Lobato Action"). *Id.* ¶¶ 9-10.

Liberty Mutual Fire Insurance Company ("Liberty Mutual") issued a primary commercial automobile liability to Torchmark Corporation, a holding company for UAIC, with a policy period

of June 1, 2008 to June 1, 2009, and a $1,000,000 combined single limit.  *Id.* ¶ 15.  American Guarantee & Liability Insurance Company ("AGLIC") issued a commercial umbrella liability policy to UAIC, with a policy period of June 1, 2008 to June 1, 2009, with limits of $25,000,000 per occurrence and in the aggregate.  *Id.* ¶ 16.

UAIC contested liability in the Lobato Action on the ground that Paak was an independent contractor, or alternatively, that if she was an employee of UAIC, she was acting outside of the scope and course of her employment at the time of the accident, which occurred when she was driving to lunch.  *Id.* ¶¶ 14, 22.  UAIC filed motions for summary judgment; on July 12, 2010, the court denied the motions, determining that there were disputed issues of material fact for the jury to decide regarding whether Paak was an independent contractor and, if not, whether she was acting within the scope and course of her employment.  *Id.* ¶¶ 22-23.  A trial date was scheduled for October 4, 2010.  *Id.* ¶ 25.

UAIC made AGLIC aware of the Lobato Action on July 19, 2010.  *Id.* ¶ 24.  A few weeks later, the plaintiffs in the Lobato Action proposed a settlement number of $5,000,000.  *Id.* ¶ 26.  Based on its own investigation and evaluation, AGLIC estimated that reasonable exposure in the Lobato Action was well in excess of Liberty Mutual's $1,000,000 policy limit.  *Id.* ¶ 30.  AGLIC repeatedly asked Liberty Mutual to engage in settlement negotiations, tender its $1,000,000 limit to AGLIC for settlement, and personally appear at mediation to settle the case; Liberty Mutual refused to do any of those things.  *Id.* ¶¶ 31, 35, 39, 40, 47, 50-51.

At the conclusion of the trial, the jury reached a verdict in favor of the plaintiffs, awarding them $3,187,614.12 in damages.  *Id.* at 56.  With interest, the final damages award was $3,670,559.49.  *Id.* at 58.  Liberty Mutual then tendered its $1,000,000 policy limit to AGLIC.  *Id.* at 61.  Ultimately, AGLIC settled the Lobato Action for some amount less than the final

damages awarded by the jury.  *Id.* ¶ 62.

On February 5, 2013, AGLIC commenced the instant action by filing in New Mexico state court its two-count Complaint for Failure to Settle and Equitable Subrogation.  Doc. 1-1.  Liberty Mutual removed the action to this Court on March 22, 2013.  Doc. 1.  Thereafter, on March 29, 2013, Liberty Mutual filed its motion to dismiss both counts of the Complaint.  Doc. 5.  AGLIC filed a response in opposition on April 26, 2013, Doc. 16; Liberty Mutual's reply followed on May 10, 2013.  Doc. 17.

## LEGAL STANDARD

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Accordingly, while the Court must take all of the factual

allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 679.

## DISCUSSION

The Complaint asserts two claims for relief.  Doc. 1-1 ¶¶ 63-76.  In Count I, AGLIC alleges that Liberty Mutual, as the primary insurer of UAIC, owed a duty directly to AGLIC, as the excess insurer of UAIC, to protect it from an excess verdict or minimize impairment of AGLIC's layer of coverage.  *Id.* ¶ 64.  In Count II, AGLIC alleges that Liberty Mutual owed a duty to UAIC, as the insured, to make an honest and intelligent decision to settle the Lobato Action to avoid an excess verdict, and that AGLIC, under the doctrine of equitable subrogation, has been assigned UAIC's right to sue for breach of this duty.  *Id.* ¶¶ 69, 75.  AGLIC alleges that the amount of the verdict in the Lobato Action was solely attributable to Liberty Mutual's breach of its duties, and seeks to recover the full amount it paid to settle the Lobato Action, plus attorney's fees and costs.  *Id.* ¶¶ 66, 74-76.  In its motion to dismiss, Liberty Mutual argues neither count states a claim upon which relief can be granted, and that the Complaint thus should be dismissed.

I.     Choice of Law

As an initial matter, the Court must determine which state's laws apply here.  "In a diversity action, federal courts apply the substantive law of the forum state, including the state's choice-of-law rules."  *Valencia v. Colo. Cas. Ins. Co.*, 560 F. Supp. 2d 1080, 1085 (D.N.M. 2007).  This Court thus looks to the choice of law rules of New Mexico, "the forum state, to determine which state's laws will be controlling."  *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 887-88 (10th Cir. 1991).

The first step in the choice of law analysis is to "decid[e] the area of substantive law – e.g., torts, contracts, domestic relations – to which the law of the forum assigns a particular claim or

issue." *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006). "The forum applies its own rules in characterizing an issue for conflicts analysis." *Id.* Here, both counts of AGLIC's Complaint essentially allege Liberty Mutual's bad faith failure to settle a claim of liability against its insured, UAIC. The New Mexico Supreme Court has specifically stated that "insurance bad faith" is a "tort . . . fundamentally distinct from a claim for breach of contract." *Sloan v. State Farm Auto. Ins. Co.*, 85 P.3d 230, 235 (N.M. 2004). Accordingly, AGLIC's claims are characterized as tort claims for purposes of this Court's choice of law analysis.

"In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of *lex loci delicti commissi* – that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Terrazas*, 142 P.3d at 377. Here, AGLIC argues, and Liberty Mutual does not dispute, that Liberty Mutual's failure to settle is alleged to have occurred in New Mexico, where the Lobato Action was brought and tried. Applying the established *lex loci delicti* choice of law rule, the Court thus determines that the substantive tort law of New Mexico governs AGLIC's direct and derivative claims against Liberty Mutual for its alleged bad faith failure to settle.

II.     Count I:   Direct Action

In Count I of the Complaint, AGLIC alleges that, by failing to conduct a competent investigation of the Lobatos' claims, honestly and fairly balance its own interests with those of AGLIC, conduct good faith and timely settlement negotiations, and tender its $1,000,000 policy limit, Liberty Mutual breached a duty of good faith owed directly to AGLIC. Under New Mexico law, however, the only rights that an excess insurer has to sue a primary insurer are "subrogation rights derived from standing in the shoes of the insured." *Design Prof'ls Ins. Cos., Inc. v. St. Paul Fire & Marine Ins. Co.*, 940 P.2d 1193 (N.M. Ct. App. 1997) (citing *Am. Gen. Fire & Cas. Co. v.*

*Progressive Cas. Co.*, 799 P.2d 1113, 1117 n.3 (N.M. 1990) (excess insurer steps into insured's shoes and asserts rights derivatively); *Puritan Ins. Co. v. Canadian Univ. Ins. Co.*, 775 F.2d 76, 80 (3d Cir. 1985) (excess insurer stands in shoes of insured making it subject to any defense raised against insured); *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 482 (Tex. 1992) (majority of states allowing excess insurer to sue primary insurer do so on equitable subrogation grounds)).   There is no precedent in New Mexico for allowing AGLIC to assert a cause of action against Liberty Mutual for breach of a duty running directly from Liberty Mutual to AGLIC. Indeed, "the majority of courts in other jurisdictions . . . similarly have determined that an excess insurer cannot assert a direct cause of action against a primary insurer that alleges the primary insurer owed the excess insurer [a] duty of good faith," or any other duty of care.   *Steadfast Ins. Co. v. Agric. Ins. Co.*, 2013 WL 6439671, No. 10-5113 (10th Cir. Dec. 10, 2013) (holding that, under Oklahoma law, excess insurer would be precluded from suing primary insurer on claim alleging that primary insurer owed excess insurer a duty of good faith and fair dealing) (citing *Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1178 (7th Cir. 1994 (noting that just a "handful of cases from New York and New Jersey" "hint" that a primary insurer owes an excess insurer a duty of care, while "the overwhelming majority of American cases describe the duty that a primary insurer owes an excess insurer as one derivative from the primary insurer's duty to the insured, citing cases); *Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co.*, 887 P.2d 455, 460 (Wash. Ct. App. 1995) ("While most courts have adopted the theory of equitable subrogation, only a minority have found the primary insurer owes a direct duty of good faith to the excess insurer."); 28 Am. Jur. Proof of Facts 3d 507 § 14 (2011) (noting that, while "[i]n a few jurisdictions, an excess insurer may directly pursue an action against a primary insurer for breach of a duty owed to the excess insurer, . . . [m]ost courts that have been asked to determine if there is

a direct duty of a primary insurer to an excess insurer (or a direct cause of action) have rejected the idea that there is such a duty")).

AGLIC argues that it may properly allege a direct cause of action under the theory of equitable subrogation, which is recognized in New Mexico.   New Mexico has applied subrogation principles in disputes between insurers under two distinct circumstances.   First, "[s]ubrogation encompasses the right of an insurance company, who has paid an insured's claim, to step into the shoes of its insured and pursue recovery from the party who is legally responsible for the insured's losses."   *S.W. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 148 P.3d 806, 809 (N.M. Ct. App. 2006).   In other words, subrogation allows an insurer who has already compensated its insured to recoup, from the tortfeasor who caused the harm to the insured, the amount that the insurer paid.   *Gulf Ins. Co. v. Cottone*, 148 P.3d 814, 818 (N.M. Ct. App. 2006).   Further, "[a] right of subrogation also exists if an insurance company pays a claim that should have been paid by another insurer."   *S.W. Steel Coil*, 148 P.3d at 809.   Under such circumstances, "[t]he remedy [of subrogation] is for the benefit of one secondarily liable who has paid the debt of another."   *State Farm Mut. Auto. Ins. Co. v. Found. Res. Ins. Co., Inc.*, 431 P.2d 737, 741 (N.M. 1967).   Thus, in *State Farm*, the court held that the plaintiff insurer, who had paid the *entire* loss stemming from an automobile accident, was entitled to exercise its equitable subrogation rights against the defendant insurer for reimbursement of payments made after the defendant insurer wrongfully denied coverage.   *Id.* at 742.

Neither of these circumstances is present here.   Liberty Mutual is not a tortfeasor who caused injury to UAIC, and from whom AGLIC is attempting to recoup what it paid to UAIC to compensate it for the injuries UAIC suffered.   Nor did AGLIC pay the entire loss stemming from the accident between Paak and Lobato; to the contrary, Liberty Mutual paid its policy limit of

7

$1,000,000.  AGLIC thus is not seeking reimbursement for a claim that should have been paid by Liberty Mutual.  Accordingly, the principles of subrogation are inapplicable, and provide no basis for a direct cause of action by AGLIC against Liberty Mutual.  AGLIC's direct cause of action against Liberty Mutual thus fails to state a claim upon which relief can be granted.

III.     Count II:   Derivative Action

In Count II of the Complaint, AGLIC, as subrogee of UAIC, asserts a derivative claim against Liberty Mutual, alleging that, by failing to conduct a competent investigation of the Lobatos' claims, honestly and fairly balance its own interests with those of AGLIC, conduct good faith and timely settlement negotiations, and tender its $1,000,000 policy limit, Liberty Mutual breached a duty of good faith owed to UAIC.  As noted above, New Mexico recognizes that an insurer, such as AGLIC, has subrogation rights derived from standing in the shoes of the insured, and may assert its rights derivatively.  *Design Prof'ls*, 940 P.2d at 1195.  Further, "New Mexico recognizes a common law cause of action for bad-faith failure to settle within policy limits." *Sloan*, 85 P.3d at 238; *see also* NMRA, Civ. UJI 13-1704.  Accordingly, AGLIC may bring a derivative cause of action against Liberty Mutual for its bad faith failure to settle the Lobato Action.

In order to state a claim of bad faith failure to settle, however, a plaintiff must allege that the defendant insurer failed "to accept reasonable settlement offers *within policy limits*."  NMRA, Civ. UJI 13-1704 (emphasis added).  Specifically, "[a]n insurance company's failure to conduct a competent investigation of the claim and to honestly and fairly balance its own interests and the interests of the insured in rejecting a settlement offer *within policy limits* is bad faith."  *Id.* (emphasis added).  Accordingly, an insurer is liable for bad faith "when its refusal to settle *within policy limits* is based on a dishonest judgment."  *Sloan*, 85 P.3d at 238 (emphasis added).

In the Complaint, AGLIC does not allege that the Lobatos made any settlement offers, reasonable or otherwise, within Liberty Mutual's policy limit of $1,000,000.[1]  Indeed, the only settlement offer identified in the Complaint was the Lobatos' proposed settlement of $5,000,000. Doc. 1-1 ¶ 26.  Further, AGLIC alleges that, based on its own investigation and evaluation, reasonable exposure in the Lobato Action was "well in excess" of Liberty Mutual's $1,000,000 policy limit.  *Id.* ¶ 30.  Thus, while AGLIC alleges that Liberty Mutual failed to tender its policy limit, there are simply no allegations that, if proven, would establish that Liberty Mutual refused to settle or rejected a settlement offer within policy limits.  In the absence of such allegations, AGLIC has failed to state a claim of bad faith failure to settle.

## CONCLUSION

AGLIC, as the excess insurer, may not directly pursue a claim against Liberty Mutual, as the primary insurer, for breach of a duty owed to AGLIC, as the excess insurer, on principles of subrogation or otherwise.  Accordingly, Count I of the Complaint fails to state a claim upon which relief can be granted.  Further, although AGLIC, as subrogee of UAIC, may assert a derivative claim against Liberty Mutual for bad faith failure to settle, such a claim requires allegations that, if proven, would establish that Liberty Mutual refused to settle or rejected a settlement offer within Liberty Mutual's policy limit of $1,000,000.  Because the Complaint pleads no such allegations, Count II fails to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that Defendant Liberty Mutual Fire Insurance Company's Motion to Dismiss [Doc. 5] is granted.

---

[1] Although the Complaint alleges that, during trial a high-low settlement option was proposed, and Liberty Mutual failed to meet the Lobatos' required low number of $750, Doc. 1-1 ¶ 47, the Complaint fails to include the Lobatos' required *high* number; accordingly, this allegation would be insufficient, if proven, to establish that the Lobatos made a reasonable settlement offer within Liberty Mutual's policy limit.

DATED this 24th day of March, 2014.

_____
MARTHA VAZQUEZ
United States District Judge